UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

b

RASHOD L. JAMES                     CIVIL ACTION NO. 1:16-CV-00138

VERSUS                              CHIEF JUDGE DRELL

K. LACROIX, *et al.*                MAGISTRATE JUDGE PEREZ-MONTES

## SUPERSEDING AND AMENDING REPORT AND RECOMMENDATION

Defendants filed a motion for clarification as to the defense of qualified immunity (Doc. 44), which is addressed below. This Report and Recommendation supersedes the previously filed Report and Recommendation (Doc. 42).

I. Background

Before the Court is a complaint filed pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), and the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-2680, by pro se plaintiff Rashod James ("James"). The named defendants are Mike D. Carvajal (warden of the United States Penitentiary in Pollock, Louisiana ("USP-Pollock")), K. LaCroix (a correctional officer employed at USP-Pollock), Bureau of Prisons ("BOP") Regional Director John Dee (located in Dallas, Texas), and the United States of America. James contends Defendants failed to protect him from an assault and attempted sexual assault by another inmate after he notified Officer LaCroix and asked for protection. James seeks compensatory and punitive damages and injunctive relief. James is presently incarcerated in USP-Florence in Florence, Colorado.

Defendants answered the complaint (Doc. 21) and filed a Motion to Dismiss for lack of jurisdiction (Doc. 33). James responded to that motion (Docs. 36, 40). Defendants' Motion to Dismiss is now before the Court for disposition.

James alleges that on June 26, 2015, he activated his in-cell duress alarm, to which LaCroix responded (Doc. 1). James contends he told LaCroix that his cellmate was threatening to kill him if he did not perform oral sex on him, but LaCroix responded that she "didn't care" and said there were "no open cells," then walked away (Doc. 10). James contends his cellmate persisted in his demands, and notified both LaCroix and Carvajal, on June 27, 2015, that he was being sexually harassed (Doc. 1). James was attacked by his cellmate on June 28, 2015, causing James to suffer a broken tooth, lacerations inside his mouth, a bloodied nose, contusions to his face and head, and injuries to his ribs and spine (Doc. 1).

James filed an informal resolution attempt on June 28, 2015, asking to have his tooth repaired and contending he had written three sick calls (Doc. 1-1, p. 1/4). On July 15, 2015, James filed a grievance alleging LaCroix had failed to take any steps to protect him from an assault and attempted sexual assault by his cellmate (Doc. 1-1, p. 2/14). The BOP responded there was no evidence to support his claim and that SHU staff was required to move him if his safety was threatened by his cellmate (Doc. 1-1, p. 3/14; 33-5, p. 55/67). The BOP did not mention the fact that an attempted sexual assault was involved (Doc. 1-1, p. 3/14; 33-5, p. 55/67).

James filed a second step grievance to the regional office, again alleging his cellmate had sexually harassed him (Doc. 1-1, p. 4/14). The Regional Director

assigned the case for investigation pursuant to the Program Statement 5324.12, Sexually Abusive Behavior Prevention and Intervention Program (Doc. 1-1, p. 5/14). The investigator interviewed LaCroix, and she denied that James had notified her of any issues with his cellmate (Doc. 33-5, p. 59/67).

James also filed a federal tort claim for personal injury damages for the assault (Doc. 1-1, p. 6/14). James did not mention the sexual component of the assault, and the BOP treated the event as if it was an ordinary assault and fight (Doc. 33-5, p. 65/67). The BOP denied James' tort claim due to lack of proof that he had complained to LaCroix, and the fact that he was being given dental and medical treatment (Doc. 11, pp. 2-3).

James was transferred to USP-Florence in November 2015 (Doc. 1-1, p. 8/14).

## II. Law and Analysis

### A. The United States' Motion to Dismiss James's FTCA claim should be denied.

#### 1. Standards Governing the Rule 12(b)(1) Motion to Dismiss.

Lack of subject matter jurisdiction may be found on any one of the following bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the Court's resolution of disputed facts. See Robinson v. TCI/US West Communications, Inc., 117 F.3d 900 (5th Cir. 1997). Where subject matter jurisdiction is being challenged, the trial court is free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case.

3

No presumptive truthfulness attaches to the plaintiff's allegations. Montez v. Dep't of Navy, 392 F.3d 147, 149 (5th Cir. 2004).

### 2. The discretionary function exception to immunity does not apply.

The United States contends this Court lacks subject matter jurisdiction over James's FTCA claim because the United States has not waived sovereign immunity where a federal employee exercises a discretionary function or duty.

The FTCA waives the United States' sovereign immunity for the torts of federal employees by granting federal district courts jurisdiction over suits for damages "caused by the negligent or wrongful act or omission of any employee of the Government. . . ." See 28 U.S.C. § 1346(b); see also Longino v. U.S. Dept. of Agric., 912 F.Supp.2d 424, 429 (W.D. La. 2012) (citing Linkous v. United States, 142 F.3d 271, 275 (5th Cir. 1998)). Under the FTCA, the United States may be liable if a private person would be liable to the claimant in accordance with the law of the place where the act or omission occurred. See Longino, 912 F.Supp.2d at 429 (citing United States v. Olson, 546 U.S. 43, 44 (2005)); see also 28 U.S.C. §§ 1346(b)(1), 2674. However, the FTCA also limits the United States's liability in certain respects. See Aretz v. U.S., 604 F.2d 417, 426 (5th Cir. 1979), on rehearing, 635 F.2d 485 (5th Cir. 1981).

The waiver of sovereign immunity under the FTCA does not apply to "discretionary functions." 28 U.S.C. 2680(a). The government is not liable for any claim arising from the exercise of discretion in the performance of governmental

4

functions or duty, whether or not the discretion involved is abused. See Sutton v. U.S., 819 F.2d 1289 (5th Cir. 1987).

To determine if the discretionary function exception to the FTCA applies, a court must consider first whether the challenged conduct involves an element of judgment or choice. See Mitchell v. United States, 225 F.3d 361, 363 (3d Cir. 2000), writ den., 532 U.S. 1007 (2001) (citing United State v. Gaubert, 499 U.S. 315, 322 (1991)). Under step one of the analysis, the discretionary function exception does not apply if the challenged action in fact violated a federal statute, regulation, or policy. If a statute, regulation, or policy leaves it to a federal agency to determine when and how to take action, the agency is not bound to act in a particular manner and the exercise of its authority is discretionary. Gibson, 809 F.3d at 812 (citing Spotts v. United States, 613 F.3d 559, 567 (5th Cir. 2010)). To be non-discretionary, a policy must prescribe a specific course of action for an agency or employee to follow. Gibson, 809 F.3d at 812 (citing Lopez v. U.S. Immigration and Customs Enforcement, 455 Fed.Appx. 427, 433 (5th Cir. 2011), cert. den., 133 S.Ct. 138 (U.S. 2012)). Second, even if the challenged conduct involves an element of judgment, the court must determine "whether that judgment is of the kind that the discretionary function exception was designed to shield." See Mitchell, 225 F.3d 361, 363 (citing Gaubert, 499 U.S. at 322–23).

This case is governed by statutes, BOP policy, and rules implemented pursuant to the Prison Rape Elimination Act ("PREA"). See 28 C.F.R. §§ 115.5, *et seq.*; 42 U.S.C. §§ 15601, *et seq.*; BOP Program Statement ("PS") 5324.12 (eff. 6/4/2015).

Generally, the United States owes a duty of care to federal prisoners under 18 U.S.C. § 4042, which states, in relevant part, that the BOP shall "provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States." See 18 U.S.C. § 4042(a)(2). Other relevant regulations are 28 C.F.R. § 541.10(a) (relating to disciplinary action against inmates) and 28 C.F.R. § 541.22(a) (regarding placements in administrative segregation). The United States argues in its brief that those regulations afford the BOP discretion in matters of prison security, inmate discipline, and the classification and housing of inmates.

In the PREA, Congress required the Attorney General to promulgate regulations concerning sexual abuse prevention which would be binding upon the Federal Bureau of Prisons. See 42 U.S.C. § 15607. Statutes were created, 28 C.F.R. §§ 115.5, et seq. ("Prisons Rape Elimination Act National Standards"), and BOP Program Statement ("PS") 5324.12, Sexually Abusive Behavior Prevention and Intervention Program, went into effect on June 24, 2015 to further the goals of the PREA. PS 5324.12 provides a written policy for dealing with sexual abuse and sexual harassment, including inmate against staff, inmate against inmate, and staff against inmate. PS 5324.12 further provides that (i) the BOP has a "zero tolerance" philosophy in regard to sexually abusive behavior, (ii) allegations of sexually abusive behavior will receive prompt intervention upon report, and (iii) perpetrators of sexually abusive behavior will be disciplined and, when appropriate, prosecuted. See Riascos-Hurtado v. United States, 2015 WL 3603965, at *2 (E.D.N.Y. 2015).

BOP rules were implemented, also effective June 24, 2015 pursuant to PS 5324.12, that follow each of the statutory regulations. BOP staff are required to follow those rules when sexually abusive behavior occurs. Pursuant to those rules, BOP staff is required to provide security to any inmate who alleges that he/she is the victim of sexually abusive behavior. Relevant statutes in 28 C.F.R. and the implementing BOP rules are:

> § 115.61, Staff and agency reporting duties– "The agency shall require all staff to report immediately and according to agency policy any knowledge, suspicion, or information regarding and incident of sexual abuse or sexual harassment that occurred in a facility." The rule at USP-Pollock states that all staff must report information concerning incidents or possible incidents of sexual abuse or sexual harassment to the Operations Lieutenant, and provide a written follow-up memorandum to document the report. The Operations Lieutenant must notify the PREA Compliance Manager.

> § 115.62, Agency protection duties–"When an agency learns that an inmate is subject to a substantial risk of imminent sexual abuse, it shall take immediate action to protect the inmate." The rule at USP-Pollock provides that, in cases where the alleged perpetrator is another inmate, the Operations Lieutenant is notified immediately and immediately safeguards the inmate.

> § 115.64, Staff first responder duties–"Upon learning of an allegation that an inmate was sexually abused, the first security staff member to respond to the report shall be required to: (1) Separate the alleged victim and abuser: (2) Preserve and protect any crime scene until appropriate steps can be taken to collect any evidence;…." The USP-Pollock rule provides "[t]he staff first responder must preserve the crime scene. SIS staff are responsible for collecting information/evidence…."

> § 115.65, Coordinated response–"The facility shall develop a written institutional plan to coordinate actions taken in response to an incident of sexual abuse, among staff first responders, medical and mental health practitioners, investigators, and facility leadership." The USP-Pollock rule sets forth initial response steps which include: (1) All staff report incidents of sexual abuse to the Operations Lieutenant (see § 115.61); (2) The Operations Lieutenant immediately safeguards the inmate (see

§§ 115.43, 115.62), (3) the Operations Lieutenant promptly refers all inmates reported to be the victim of sexually abusive behavior to the Health Services Unit; and (4) the Operations Lieutenant promptly refers all inmates reported to be the victim of sexually abusive behavior to Psychology Services for assessment.

Thus, there are now BOP rules that provide a non-discretionary and specific course of action for the staff at USP-Pollock to follow when reporting and dealing with inmate complaints of sexual abuse and harassment. Because James alleges that LaCroix and Carvajal violated BOP policy and rules when they failed to follow the BOP procedures for handling his complaint of sexual harassment, the discretionary function exception to liability under the FTCA is not applicable. The United States' motion to dismiss James' FTCA claim pursuant to the discretionary function exception to liability should be denied.

### B. Defendants' motion for summary judgment should be denied in part and granted in part.

#### 1. Standards governing the Motion for Summary Judgment.

Under Rule 56 of the Federal Rules of Civil Procedure, a court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Paragraph (e) of Rule 56 also provides the following:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
> (1) give an opportunity to properly support or address the fact;
> (2) consider the fact undisputed for purposes of the motion;
> (3) grant summary judgment if the motion and supporting materials-- including the facts considered undisputed--show that the movant is entitled to it; or

(4) issue any other appropriate order.[1]

"A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" See Hefren v. McDermott, Inc., 820 F.3d 767, 771 (5th Cir. 2016) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In deciding a motion for summary judgment, a court must construe all facts and draw all inferences in the light most favorable to the non-movant. See Dillon v. Rogers, 596 F.3d 260, 266 (5th Cir. 2010). However, a mere scintilla of evidence is insufficient to defeat a motion for summary judgment. See Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999).

## 2. Standards governing the qualified immunity defense.

Defendants assert qualified immunity as a defense. In federal civil rights lawsuits, invocation of the qualified immunity defense shifts the burdens of proof for public officials' actions or omissions in the performance of their official duties:

> The defendant official must initially plead his good faith and establish that he was acting within the scope of his discretionary authority. Once the defendant has done so, the burden shifts to the plaintiff to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law.

See Bazan v. Hidalgo County, 246 F.3d 481, 489 (5th Cir. 2001) (citing Salas v. Carpenter, 980 F.2d 299, 306 (5th Cir. 1992)).

The bifurcated test for qualified immunity is: (1) whether the plaintiff has alleged a violation of a clearly established constitutional right; and, (2) if so, whether

---

[1] Local Rule 56.2W (formerly 2.10W) also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted unless the opposing party controverts those facts

9

the defendant's conduct was objectively unreasonable in the light of the clearly established law at the time of the incident. See Hare v. City of Corinth, 135 F.3d 320, 325 (5th Cir. 1998), and cases cited therein.

The first step is to determine whether the plaintiff has alleged violation of a clearly established constitutional right. This analysis must be conducted under the currently applicable constitutional standards. See Hare, 135 F.3d at 325. A constitutional right is clearly established if, in light of pre-existing law, the unlawfulness is apparent. Officials must observe general, well-developed legal principles. See Doe v. Taylor Independent School Dist., 15 F.3d 443, 445 (5th Cir. 1994), cert. den., 513 U.S. 815 (1994).

The second prong, objective reasonableness, is a question of law. The analysis for objective reasonableness is different from that for deliberate indifference (the subjective test for addressing the merits). For qualified immunity, the subjective deliberate indifference standard serves only to demonstrate the clearly established law in effect at the time of the incident and, under that standard (the minimum standard not to be deliberately indifferent), the actions of the individual defendants are examined to determine whether, as a matter of law, they were objectively unreasonable. Hare, 135 F.3d at 328.

The qualified immunity doctrine does not protect an official whose subjective intent was to harm the plaintiff, regardless of the objective state of the law at the time of his conduct. See Douthit v. Jones, 619 F.2d 527, 533 (5th Cir. 1980). A party seeking to avoid a qualified immunity defense must prove that the official either

actually intended to do harm, or took an action which, although not intended to do harm, was so likely to produce injury that the harm was substantially certain to result.  See Douthit, 619 F.2d at 533.

### 3. There are genuine issues of material fact that preclude a summary judgment on James's FTCA claim.

The United States contends that James has not stated a claim for negligence by Officer LaCroix or Warden Carvajal.  The United States argues that, although the BOP has a duty to exercise ordinary care, there is no evidence of a breach of that duty, or that such breach was the cause in fact or legal cause of James's injuries.

In order to recover, a plaintiff must show the Government was negligent in the exercise of its responsibilities.  Jones v. U.S., 534 F.2d 53, 54 (5th Cir. 1976), cert. denied, 429 U.S. 978 (1976).  In this case, Louisiana law controls because the incident occurred in this state.

Articles 2315 and 2316 of the Louisiana Civil Code provide that every person is responsible for damages caused by fault or negligence.  Bursztajn v. U.S., 367 F.3d 485, 489 (5th Cir. 2004), citing Pitre v. Louisiana Tech Univ., 95-1466 (La. 5/10/96), 673 So.2d 585, 589.  The relevant inquiries are:

> (1) Was the conduct of which the plaintiff complains a cause-in-fact of the resulting harm?
> (2) What, if any, duties were owed by the respective parties?
> (3) Were the requisite duties breached?
> (4) Was the risk, and harm caused, within the scope of protection afforded by the duty breached?
> (5) Were actual damages sustained?

If the plaintiff fails to satisfy one of the elements of this "duty-risk" analysis, the defendant is not liable. Bursztajn, 367 F.3d at 489 (citing Pitre, 673 So.2d at 589–90).

The new policy and rules for handling inmate complaints of sexual harassment and sexual assault leave BOP officers no discretion as to whether to follow those procedures. James alleges that LaCroix and Carvajal had a duty to follow those procedures for reporting his complaint and securing his safety; a breach of that duty by failing to follow those procedures; and James' resulting injuries when his cellmate attacked him the following day.

Defendants argue there is no evidence that James complained to LaCroix and Carvajal. Carvajal states in an affidavit (Doc. 33-5) that he did not sign the SHU logbook on June 27, 2015, so he was not there for James to have complained to him. However, James contends in his brief (Doc. 40) that he emailed a "cop out" to Carvajal, rather than complaining to him directly in the SHU.

Defendants submitted an unverified statement by LaCroix in which she states: "On June 26, 2015 at no time was I ever told by inmate James, Rashod Reg. No. 22665-045 that he felt his life was in any type of danger" (Doc. 33-5). LaCroix states in an affidavit that she does not remember very much about James and does not remember him complaining to her about his cellmate (Doc. 33-7). LaCroix states that she would not have ignored a compliant that an inmate feared his cellmate, but would have referred it for immediate investigation and would have separated the inmates

(Doc. 33-7). In his brief (Doc. 40), James repeats his contention that he complained directly to LaCroix, but she ignored his complaint.

Although Defendants argue there is no proof that James complained to LaCroix and Carvajal, he contends they ignored his complaint, which would explain why there is no evidence that he complained. Moreover, the evidence submitted by Defendants does not foreclose the possibility that James complained to LaCroix, and LaCroix simply does not remember that complaint.

Since there are genuine issues of material fact as to whether James complained to LaCroix and Carvajal about his cellmate's threats, whether they ignored his complaint, and whether they otherwise failed to follow the new rules for dealing with inmate complaints of sexual abuse, Defendants' motion for summary judgment should be denied on this issue.

> 4. **There are genuine issues of material fact that preclude a summary judgment on James's Bivens claims against LaCroix and Carvajal.**

James filed <u>Bivens</u> claims against Warden Carvajal, Officer LaCroix, and Regional Director John Dee. Under <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), a plaintiff may recover damages for any injuries suffered as a result of federal agents' violations of his constitutional rights. A <u>Bivens</u> action is analogous to an action under § 1983, and the Fifth Circuit does not distinguish between <u>Bivens</u> and § 1983 claims. See <u>Izen v. Catalina</u>, 393 F.3d 363, 367 n.3 (5th Cir. 2005). The constitutional torts authorized by each are coextensive. <u>Izen</u>, 398 F.3d at 367, n.3.

For an inmate to succeed on a claim based on a failure to prevent harm, he must show that (1) he was incarcerated under conditions posing a substantial risk of serious harm, and (2) the prison official was "deliberately indifferent" to his health or safety. Failing to act with deliberate indifference to a substantial risk of harm is the equivalent of recklessly disregarding that risk. See Farmer v. Brennan, 511 U.S. 825, 836 (1994). Deliberate indifference is a subjective test, and it must be shown that the official actually knew of the risk of harm to the inmate. It is insufficient to show solely that the official should have known of the risk. The official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference. See id. at 837.

Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence. See id. at 841. A fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious. See id. at 842. It remains open to an official to prove that he was unaware of even an obvious risk to inmate health and safety. See id. at 844; see also Hinojosa v. Johnson, 277 Fed.Appx. 370, 374 (5th Cir. 2008). The failure of a prisoner to give any advance notice to prison officials of potential danger to the prisoner's safety is not dispositive of the issue of the official's awareness, see Farmer, 511 U.S. at 848, nor is advance notice of a substantial risk of assault posed by a particular fellow prisoner a prerequisite, see id. at 849.

A prison official who actually knew of a substantial risk to inmate health and safety may be found free from liability if he responded reasonably to the risk, even if the harm ultimately was not averted.  See id. at 844.

James contends that, when he first told Officer LaCroix he was being sexually harassed and threatened with assault by his cellmate, she told him she did not care and there was no space to move him to, and walked away.  James further contends he complained of the sexual harassment to both LaCroix and Warden Carvajal the next day.  James contends LaCroix and Carvajal ignored his complaints, were deliberately indifferent to his situation, failed to protect him, and failed to follow the new procedures in place for such complaints.

James's constitutional right to not be sexually harassed or assaulted in prison was well-established in June 2015.  In 2003, the PREA clearly established the Government's policy and intent to eliminate prison rape.  Therefore, the duty of prison officials to protect prisoner from sexual harassment and assault was well-established in June 2015.  However, the BOP rules establishing non-discretionary procedures for prison officials to follow when handling sexual abuse complaints went into effect on June 24, 2015, two days before the date James contends he complained to Officer LaCroix that he was being sexually harassed by his cell mate, three days before he contends he complained to Officer LaCroix and Warden Carvajal, and four days before he was sexually assaulted by his cell mate.

The new BOP rules implement mandatory procedures for handling sexual abuse complaints and cases.  The new rules did not change Defendants' ongoing duty

to protect James.  See Farmer, 511 U.S. at 836.  Therefore, Defendants are not entitled to qualified immunity simply because new mandatory procedures were implemented for handling sexual abuse complaints.  However, assuming Defendants were actually aware of James's situation with his cellmate, the existence of the new rules affects the analysis of whether Defendants' responses to James's complaints were reasonable.

As previously discussed, there are genuine issues of material fact as to whether LaCroix and Carvajal were aware that James was being sexually harassed by his cellmate and were deliberately indifferent to the situation.  If Defendants received James's complaints and took no action, inaction was arguably so likely to produce injury that the harm was substantially certain to result.  The new rules implementing mandatory procedures for handling such complaints would render inaction inherently unreasonable.  Therefore, there are also genuine issues of material fact as to whether Defendants are entitled to qualified immunity on this issue.

Defendants' motion for summary judgment should be denied as to LaCroix and Carvajal on James's Bivens claim for failure to protect him from sexual abuse by his cellmate.

> 5. **There are no genuine issues of material fact that preclude a summary judgment on James's Bivens claims against Warden Carvajal and Regional Director Dee.**

James contends that Warden Carvajal and Regional Director Dee are liable to him for failure to properly supervise, train, and discipline the staff at USP-Pollock.

James alleges that Carvajal and Dee knew USP-Pollock was overcrowded and that staff had been routinely written up or sued for deliberate indifference and failing to act when they received inmate complaints concerning impending assaults. James contends Carvajal and Dee failed to act to enforce BOP policies governing staff negligence or indifference.

The doctrine of respondeat superior–which makes an employer or supervisor liable for an employee's alleged tort–is unavailable in suits under 42 U.S.C. §1983 against an employer/supervisor in his individual capacity. See Thompkins, 828 F.2d at 303. Supervisory officials cannot be held vicariously liable for their subordinates' actions. Supervisory officials may be held liable only if: (1) they affirmatively participate in acts that cause constitutional deprivation; or (2) implement unconstitutional policies that cause injury. See Mouille v. City of Live Oak, Tex., 977 F.2d 924, 929 (5th Cir. 1992), cert. den., 508 U.S. 951 (1993); Thompkins, 828 F.2d at 303.

James has not alleged or shown that Warden Carvajal or Regional Director Dee affirmatively participated in Officer LaCroix's failure to respond to his request for protection from a sexual assault. James also has not alleged or shown that Carvajal or Dee implemented unconstitutional policies that caused or allowed LaCroix to ignore James's complaint. There are non-discretionary policies in place at USP-Pollock for handling complaints of sexual harassment and assault.

James also contends Carvajal and Dee failed to train LaCroix as to the procedures for handling complaints of sexual harassment and assault. A cause of

17

action for "failure to train" depends on a showing of (1) a "deliberately indifferent" policy of training (2) that was the "closely related" cause of the violation of the plaintiff's federally protected rights.  See Doe v. Taylor Independent School Dist., 15 F.3d 443, 453 (5th Cir.), cert. den., 513 U.S. 815 (1994).  A plaintiff must prove that a deficiency in the training program is closely related to the ultimate injury.  See City of Canton, Ohio v. Harris, 489 U.S. 378, 391 (1989).  Regarding the element of causation, an isolated incident is not enough to show that a policy or custom exists. Isolated violations are not the persistent, often repeated constant violations that constitute custom and policy.  In order to be a policy, inadequate training must be a product of a conscious choice.  See Hood v. Itawamba County, Miss., 819 F.Supp. 556, 564 (N.D.Miss. 1993) (citing Palmer v. City of San Antonio, 810 F.2d 514, 516 (5th Cir. 1987); Grandstaff v. City of Borger, Tex., 767 F.2d 161, 169 (5th Cir. 1985)).

The existence of a constitutionally deficient policy cannot be inferred from a single wrongful act, where the policy relied upon is not itself unconstitutional. Thompkins, 828 F.2d at 304.  That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the policymaker, because the officer's shortcomings may have resulted from factors other than a faulty training program. City of Canton, Ohio, 489 U.S. at 391.

James alleges deliberate indifference on the part of Officer LaCroix and Warden Carvajal for not adhering to BOP policies and regulations for handling inmate complaints of sexual harassment.  There is no evidence that other officers at

USP-Pollock routinely ignored such complaints, to indicate deficient training in handling sexual harassment/assault complaints at USP-Pollock.

Defendants' motion for summary judgment (Doc. 33) should be granted in favor of Carvajal and Dee on James's <u>Bivens</u> claims that they did not adequately train officers at USP-Pollock.

## III. <u>Conclusion</u>

Based on the foregoing discussion, IT IS RECOMMENDED that the United States' motion to dismiss and motion for summary judgment (Doc. 33) be DENIED as to James's FTCA claim.

IT IS ALSO RECOMMENDED that the United States' motion for summary judgment (Doc. 33) be DENIED IN PART as to LaCroix and Carvajal on James's <u>Bivens</u> claim for deliberate indifference to his complaints of sexual harassment.

IT IS ALSO RECOMMENDED that the United States' motion for summary judgment (Doc. 33) be GRANTED IN PART as to Carvajal and Dee on James' <u>Bivens</u> claim for inadequate training.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs, etc.) may be filed. Providing a courtesy copy of

the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this ___17th___ day of April, 2017.

Joseph H.L. Perez-Montes
United States Magistrate Judge